**PETROFF AMSHEN**

Serge F. Petroff
*Steven Amshen
James Tierney
Jill Schaefer
Maria Garber

*(*admitted in New York & New Jersey)*

June 2, 2025

**VIA CM/ECF**
Hon. Frederic Block, U.S.D.J.
United States District Court
Eastern District of New York

      Re: *Jeffrey Huss and Ruth Huss v. Bank of America, N.A.*
         Case No. 1:25-cv-01713-FB-JRC

Dear Judge Block:

  This office represents Plaintiffs Jeffrey Huss and Ruth Huss ("Plaintiffs") in the referenced action. We respectfully submit this letter in opposition to the request for a pre-motion conference by Defendant Bank of America, N.A. ("BANA" or "Defendant") filed May 27, 2025 (ECF No. 10), in anticipation of its motion to dismiss the Complaint (ECF No. 1).

  Pursuant to Your Honor's Individual Practices and Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs intend to file an Amended Complaint as of right within the time permitted by rule. This Amended Complaint will address the alleged pleading defects raised in Defendant's pre-motion letter and further substantiate Plaintiffs' claims. Accordingly, a pre-motion conference on the current Complaint would be an inefficient use of the Court's and the parties' resources. Nevertheless, Plaintiffs maintain that the current Complaint sufficiently states plausible claims for relief and that Defendant's anticipated grounds for dismissal are without merit.

  BANA has serviced Plaintiffs' mortgage loan since its origination on or about November 2, 2005, either directly or through one of its predecessor entities, including BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing LP. Accordingly, BANA has the authority to act and execute documents in connection with the mortgage loan, including loan modification agreements such as the one executed on July 19, 2013, and performs all servicing functions associated with the loan. These functions include, but are not limited to, collecting and processing payments, maintaining loan and escrow account records, issuing monthly mortgage statements, providing mortgage-related notices, reviewing and responding to qualified written requests, evaluating and approving loan modifications, administering escrow disbursements, and reporting account information to credit reporting agencies

  BANA's arguments for dismissal rely on the alleged passing of the statute of limitations for various claims. However, none of Plaintiffs' claims are time-barred, as any such claims are subject to equitable tolling because (i) BANA concealed their existence by taking affirmative steps to prevent discovery of the claims, and by providing Plaintiffs with incomplete, inaccurate, and contradictory information when requested; and (ii) the financial harm giving rise to Plaintiffs' claims under RESPA and TILA have been ongoing and cumulative, resulting in continuous harm to the Plaintiffs. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322-23 (2d Cir. 2004); *see also Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1040 (9th Cir. 2014) (holding

that TILA and RESPA claims are subject to equitable tolling because "[t]here may be situations in which a consumer is unable to file suit within the statutory limitations period precisely because of a real estate service provider's obfuscation or failure to disclose.").

Plaintiffs allege that BANA failed to comply with its obligations under RESPA by providing an incomplete and inadequate response to their Qualified Written Request ("QWR"). Under 12 U.S.C. § 2605(e)(2), a servicer must, within 30 business days of receiving a QWR, investigate and provide a written explanation that includes the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." Additionally, 12 C.F.R. § 1024.36(d)(1) requires servicers to provide the requested information or explain why it cannot be provided within the same timeframe. BANA provided partial account records that omitted key financial details, including incomplete payment histories and escrow transactions. BANA's failure to investigate Plaintiffs' account upon receipt of the QWR, and to identify and correct errors, means that interest has continued to accrue on an inflated principal balance that incorporates improperly assessed fees and charges. This has caused Plaintiffs ongoing harm, as they have been unable to obtain relief from, or even confirm the basis of, those inflated amounts. Contrary to BANA's assertion that Plaintiffs only provided "generalized references" to attorney's fees, credit harm and emotional distress, Plaintiffs expressly pointed to misapplied payments, unexplained advances, and discrepancies in escrow analysis—each of which constitutes a "covered error" under 12 C.F.R. § 1024.35(b). Accordingly, Plaintiffs' RESPA claims are actionable and warrant relief pursuant to 12 U.S.C. § 2605(f).

Further, while 12 C.F.R. §§ 1024.17, 1024.34(a), and 1024.38, do not independently provide for enforcement, they impose servicing obligations that are enforceable under 12 U.S.C. § 2605 through § 2605(k) and their corresponding enforcement provision, § 2605(f), which grants borrowers a private right of action. A servicer's failure to adhere to these requirements constitutes a violation of 12 U.S.C. § 2605(k), which is expressly actionable under § 2605(f).

As to BANA's opposition to Regulation Z's on "dual compensation," Plaintiffs allege that BANA violated 12 C.F.R. § 1026.36(d)(2)(i) by repeatedly charging duplicative fees—such as property inspections—that had already been paid by other parties, and capitalizing those charges into Plaintiffs' principal balance through the July 2013 Loan Modification. This Modification increased the unpaid principal by $42,739.32, incorporating "unpaid and deferred interest, fees, escrow advances, and other costs," which then accrued additional interest. The loan history provided in response to Plaintiffs' QWR showed at least 31 property inspections, many duplicative, unexplained, or billed multiple times per month without justification. Invoices often failed to match inspection dates, and many charges were assessed during periods when no inspections appear to have occurred. Plaintiffs allege these inflated fees were capitalized to generate further interest income, in violation of Regulation Z. Contrary to BANA's claim that Plaintiffs failed to plead a factual basis, the Complaint identifies the specific services, improper charges, and statutory violations, supported by exhibits, account records, and BANA's regulatory history of similar misconduct. Accordingly, Plaintiffs' claims under § 1026.36(d)(2)(i) are actionable and properly pled under Rule 12(b)(6).

Under 15 U.S.C. § 1692a(6) of the Fair Debt Collection Practices Act (FDCPA), a "debt collector" is defined as any entity that (1) engages in a business the principal purpose of which is

the collection of debts, (2) regularly collects or attempts to collect debts owed to another, or (3) enforces security interests under 15 U.S.C. § 1692f(6). BANA falls squarely within this definition, as it regularly collects debts on behalf of investors, trusts, and third-party entities that own the underlying mortgage loans, thereby engaging in debt collection activity as contemplated by the statute. BANA did not originate Plaintiff's loan, which was initially issued by Somerset Investors Corp., and at the time of the acquisition, the loan was already in default. An entity collecting or servicing defaulted loans that it did not originate falls under the FDCPA's definition of a debt collector under 15 U.S.C. § 1692a(6)(F)(iii).

Regarding Defendant's opposition to Counts X and XI, Plaintiffs allege that BANA violated N.Y. Banking Law § 6-k and 3 N.Y.C.R.R. § 419.4(a) by failing to provide annual escrow statements and mismanaging Plaintiffs' escrow account for over a decade. Contrary to BANA's claim that § 6-k addresses only late insurance payments, the statute must be read with § 419.4(a), which incorporates federal RESPA standards (12 C.F.R. § 1024.17(i)(1)) and requires annual disclosures. As a mortgage investing institution, BANA is subject to these rules. Plaintiffs assert BANA failed to deliver escrow statements for at least 15 years, denying them the ability to track disbursements, understand escrow shortages, or assess rising payments. They also allege that BANA made only one documented hazard insurance disbursement and provided no itemized record of others, despite asserting ongoing shortages—conduct falling squarely within § 6-k(5)(a)–(c). These failures reflect systemic escrow mismanagement and a breach of BANA's disclosure obligations, causing financial harm and supporting actionable claims under New York law that are not subject to dismissal.

Finally, with respect to Plaintiffs' claim for an accounting, Plaintiffs need not allege a fiduciary or confidential relationship with BANA. "In some cases, the New York courts have held that a fiduciary or confidential relationship is not necessary to obtain judicial relief . . . by treating the action for accounting as an action at law for monetary relief, and not as an equitable action for accounting." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996). "Where a party seeks an accounting, but the primary demand is for monetary damages, '[t]he accounting is merely a method to determine the amount of the monetary damages. The action therefore sounds in law and not in equity.'" *Arrow Comm. Labs., Inc. v. Pico Prods., Inc.*, 219 A.D.2d 859, 860 (App. Div. 4th Dep't 1995). Given that most of Plaintiffs' claims at least partially involve BANA's deliberate withholding and concealing of damaging information, and/or furnishing of materially contradictory information concerning Plaintiffs' loan account, accounting is necessary to allow Plaintiffs to determine the full extent of the damages.

Plaintiffs' current Complaint provides sufficient factual allegations to state plausible claims for relief. Furthermore, Plaintiffs intend to file an Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) to address the issues raised by Defendant and to provide additional factual support for their claims. Accordingly, Plaintiffs respectfully request that the Court deny Defendant's request for a pre-motion conference as moot, or, in the alternative, direct that any briefing schedule for a motion to dismiss be deferred until after the Amended Complaint is filed.

    Respectfully submitted,

    */s/ Jill Schaefer*
    Jill Schaefer, Esq.